People v J.G. (2024 NY Slip Op 50080(U))

[*1]

People v J.G.

2024 NY Slip Op 50080(U)

Decided on January 25, 2024

Youth Part, Erie County

Freedman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 25, 2024
Youth Part, Erie County

The People of the State of New York

against
J.G., AO.

Index No. FYC-73909-20/001

Denise A. Herman, Esq., (Assistant District Attorney)
Sunil Bakshi, Esq., (for the Principal)

Brenda M. Freedman, J.

The People having moved pursuant to Criminal Procedure Law, Article 722, § 722.23(1), et seq. for an order preventing removal of this action to the juvenile delinquency part of Erie County Family Court, and upon reading the Notice of Motion and Supporting Affidavit of Denise A. Herman, Esq. (Assistant District Attorney), dated January 12, 2024; responsive papers dated January 19, 2024 by Sunil Bakshi, Esq., on behalf of AO J.G.; oral argument and a hearing on the motion having been waived; and due deliberation having been had, the Court finds the following:
Procedural History
AO J.G. is charged under FYC-73909-23 with one count of Criminal Possession of Stolen Property in the Third Degree, PL § 165.50, a class D felony; one count of Obstructing Governmental Administration in the Second Degree, PL § 195.05, a class A misdemeanor; one count of Unlawfully Fleeing a Police Officer, PL § 270.25, a class A misdemeanor; one count of Reckless Driving, VTL § 1212, a misdemeanor; and nine other traffic infractions.
On December 15, 2023, AO J.G. appeared for an arraignment in Youth Part and entered a plea of not guilty. The People conceded the six-day reading, and this Court found that the charges did not meet the requirements of CPL § 722.23(2)(c) to remain in Youth Part. The People indicated that they would make a motion under CPL, Art. 722, § 722.23(1) requesting this matter not be removed to Family Court. AO J.G. was released, having voluntarily accepted probation services.
The decision date of the extraordinary circumstances motion was scheduled for January 26, 2024.
Findings of Fact
It is alleged that on December 10, 2023 at approximately 2:08 AM, in the Town of Amherst, a police officer responded to a report of two stolen vehicles (one Black SUV and one Red SUV) from a KIA dealership. Shortly thereafter, the Lieutenant saw a Black SUV speed past then do multiple donuts in an intersection. The Lieutenant saw a driver in the vehicle and no other passengers.
The Lieutenant saw the vehicle turn right and continue speeding, driving approximately 80 m.p.h. in a 45 m.p.h. zone. During pursuit of the vehicle, the Lieutenant observed the vehicle driving on the wrong side of the road with no headlights on. The Lieutenant, as well as an Amherst Police Investigator, continued the high-speed pursuit of the Black SUV and observed as the vehicle erratically changed lanes, turned over a curb, and drove over a second curb in a Tops parking lot. The Black SUV was paced by the Investigator as going approximately 120 m.p.h. in a 45 m.p.h. zone. The Black SUV then went airborne and struck a support wire to an electrical pole in the Tops parking lot. The driver of the SUV fled the vehicle immediately after the crash. The Lieutenant began looking for the driver on foot. He heard a noise come from a dumpster near the accident and later saw someone, later identified as AO J.G., crawl out of the dumpster, which was located approximately 200 yards from the scene of the accident.
The Lieutenant went back to investigate the accident scene after AO J.G. was placed in custody. The Black SUV had crashed into an electric pole, and the damage to the electric pole created a live wire, which was an extreme hazard and could have caused serious physical injury or death to anyone who went into that area. The Black SUV was observed with front end damage, and there were car parts found at the scene consistent with the Black SUV.
Conclusions of Law
Pursuant to CPL § 722.23(1)(a), the Court shall order removal of the action to Family Court unless, within 30 days of arraignment, the District Attorney makes a written motion to prevent removal of the action. 
Pursuant to CPL § 722.23(1)(d), the Court shall deny the district attorney's motion to prevent removal unless the Court determines that extraordinary circumstances exist that should prevent the transfer of the action to Family Court. CPL § 722.23 does not define the term "extraordinary circumstances".
In People v T.P., 73 Misc 3d 1215(A) (NY Co Ct 2021), the Court referenced the common dictionary and the legislative history of the Raise the Age legislation and interpreted "extraordinary circumstances" to mean that "the People's Motion Opposing Removal must be denied unless they establish the existence of an 'exceptional' set of facts which 'go beyond' that which is 'usual, regular or customary' and which warrant retaining the case in the Youth Part instead of removing it to the Family Court."
New York State Assembly members debating the Raise the Age legislation indicated that the extraordinary circumstances requirement was intended to be a "high standard" for the District Attorney to meet, and denials of transfers to Family Court "should be extremely rare". NY Assembly Debate on Assembly Bill A03009C, Part WWW, at 39, April 8, 2017; see also, People v S.J., 72 Misc 3d 196 (Fam Ct 2021). "[T]he People would satisfy the 'extraordinary circumstances' standard where 'highly unusual and heinous facts are proven and there is a strong proof that the young person is not amenable or would not benefit in any way from the heightened services in the family court'. People v T.P., 73 Misc 3d 1215(A) (NY Co Ct 2021) citing Assembly Record, p. 39.
The legislators indicated that in assessing "extraordinary circumstances", the Judge should consider the youth's circumstances, including both aggravating factors and mitigating circumstances. People v T.P., 73 Misc 3d 1215(A) (NY Co Ct 2021); Assembly Record, pp. 39 to 40. Aggravating factors make it more likely that the matter should remain in Youth Part, and mitigating circumstances make it more likely that the matter should be removed to Family Court. People v S.J., 72 Misc 3d 196 (Fam Ct 2021).
Aggravating factors include whether the AO: (1) committed a series of crimes over multiple days, (2) acted in an especially cruel and heinous manner, and (3) led, threatened, or coerced other reluctant youth into committing the crimes before the court. People v S.J., 72 Misc 3d 196 (Fam Ct 2021); Assembly Record, p. 40.
Mitigating circumstances are meant to include a wide range of individual factors, including economic difficulties, substandard housing, poverty, difficulties learning, educational challenges, lack of insight and susceptibility to peer pressure due to immaturity, absence of positive role models, behavior models, abuse of alcohol or controlled substances by the AO, or by family or peers. People v S.J., 72 Misc 3d 196 (Fam Ct 2021); Assembly Record at 40.
"The People may not, in any way, use the [AO's] juvenile delinquency history, including any past admissions or adjudications, in any application for removal under the statute." People v J.J., 74 Misc 3d 1223(A) [NY Co Ct 2022]; citing Family Court Act § 381.2(1); see also, People v. M.M., 64 Misc 3d at 269, supra, citing Green v. Montgomery, 95 NY2d 693, 697 (2001). 
CPL § 722.23(1)(b) mandates that every motion to prevent removal of an action to Family Court "contain allegations of sworn fact based upon personal knowledge of the affiant." This Court considered only those exhibits and documents whose content fall within the mandate of CPL § 722.23(1)(b) in making this decision.
It is alleged that AO J.G. was driving a stolen vehicle in the middle of the night. He was speeding, doing donuts in the middle of an intersection, and ultimately went airborne and struck an electrical pole. He risked the lives of anyone in his path, including the officers following him, and his own life. However, it is not alleged that he caused physical injury to anyone. He did not commit a separate series of crimes over multiple days. He is not alleged to have led, threatened, or coerced other reluctant youth into committing the crimes before the court. It is unclear whether the driver of the Red SUV has been apprehended, and the People have not made any allegations that AO J.G. led or coerced this driver to participate in any crimes. It is not alleged that this AO was in possession of a weapon.
This Court finds that highly unusual and heinous facts have not been proven. In support of mitigating factors, Defense counsel argues that AO J.G. does not have a criminal record, and the charges here may be consistent with adolescent type behavior. This Court feels as if AO J.G. may benefit from the heightened services of Family Court, having voluntarily accepted probation services.
This is not the rare, "one out of 1,000 cases" that the Legislature envisioned would remain in the Youth Part and not be removed to Family Court. (Assembly, Record of Proceedings, April 8, 2017, pp. 37-38); see People v J.M., 64 Misc 3d 259, 268 [NY Co Ct 2019]. Extraordinary circumstances do not exist to prevent the transfer of this action to Family Court. The aggravating factors do not outweigh the mitigating circumstances. The People did not meet its burden to prevent removal of this action to Family Court. This matter shall be removed.
This constitutes the opinion, decision, and order of this Court.
SO ORDERED.
ENTER,
_____________________________________
HON. BRENDA M. FREEDMAN